UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHEN SOCCI,

                      Plaintiff,                      **REPORT AND RECOMMENDATION**

      -against-                                      CV 17-5469 (JMA)(AYS)

JPMORGAN CHASE & CO.,

                      Defendant.
-------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

Plaintiff Stephen Socci ("Socci" or "Plaintiff") brought this case against defendant JPMorgan Chase Bank, N.A., improperly named JP Morgan Chase & Co. ("Chase" or "Defendant"), to recover damages for Defendant's alleged breach of contract in allowing the wrongful withdrawal of approximately $330,000.00 from Plaintiff's account.

Presently before this court, on referral from the Honorable Joan M. Azrack for report and recommendation, is Defendant's motion for summary judgment.

For the reasons set forth below it is respectfully recommended that Defendant's motion be granted.

BACKGROUND

<u>Basis of Facts Recited Herein</u>

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). The facts are undisputed unless otherwise noted.

The Court turns to discuss the facts relied upon by the parties in connection with the present motion.

A. Factual Allegations

1. The Chase Account

On or about October 26, 2006, Socci opened a Chase Premier Platinum Savings account ending in 3425 (the "Account"). Pursuant to his signed signature card for the Account, Plaintiff "acknowledge[d] receipt of the Bank's deposit account agreement, which includes all provisions that apply to this deposit account and the Bank Privacy Policy, and agree[d] to be bound by the agreement and terms contained therein." (Declaration of Jennifer Bartone ("Bartone Decl."), Docket Entry ("DE") [57-2], Ex. A at p. 5.[1]) According to a December 2015, Deposit Account Agreement (the "Agreement"), Chase "may rely on a power of attorney until [it] receive[s] written notice that it has been revoked either from you or as a matter of law (for example, by your death.") (See Bartone Decl., Ex. G at p. 32.) The Agreement further required that a customer notify Chase of any errors on an account statement within thirty days of the statements being made available. (Id. at p. 30.) Socci maintains that it is impossible for him to have acknowledged receipt of the Agreement as he opened his account in October 2006, yet the referenced Agreement was revised in 2012 and is dated "EFFECTIVE 2/23/2014." (Pl.'s 56.1 St., DE [57-8], ¶ 3; Bartone Decl., Ex. G at p. 50.)

2. Powers of Attorney History

---

[1] For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in cases.

2

In or around 2007, Plaintiff began a ten-year period of incarceration. Between 2008 and 2015, Plaintiff authorized and removed four agents to act on his behalf in connection with the Account via facially valid powers of attorney.

In or around July 2008, while still incarcerated, Socci added his friend, Beatrice Crowder, to the Account, as the holder of a power of attorney. (Bartone Decl., Ex. B at p. 7.) In or around August 2008, Socci added his cousin, Patrick Socci, to the Account, also as a holder of a power of attorney. (Id., Ex. C at p. 9.) Signature cards were executed on Plaintiff's behalf. (Id.) In or around October 2008, Ms. Crowder notified Chase that she no longer wished to be a signatory on the Account and was removed. (Id., Ex. D at p. 11.)

In or around June 2010, Socci added his relative, Tracey Crystal, to the Account as a holder of a power of attorney, to act with Plaintiff's cousin, Patrick Socci. (Bartone Decl., Ex. E at 13.)

On or about January 28, 2014, while still incarcerated, Plaintiff wrote a letter to Chase requesting that Ms. Crystal be removed from the Account. (Bartone Decl., Ex. F at pp. 15-16.) The letter does not state why Plaintiff wished to remove Ms. Crystal from the Account, however, during his September 7, 2022 deposition, Socci alleged that Ms. Crystal was stealing money from the Account. (Declaration of Brian A. Lacoff ("Lacoff Decl,"), DE [57-1], Ex. A Tr. 79:16-80-20.) At no time did Socci ever alert Chase about this alleged theft, nor did he take any action to close the Account or transfer his funds.

3. Margaret Tarulli

On or about December 18, 2015, Margaret Tarulli ("Tarulli"), presented a power of attorney to Chase, which contained notarized signatures for her and Plaintiff (the "POA"). (Bartone Decl., Ex. I at pp. 55-58.) After reviewing the POA and verifying that it was a New

3

York Statutory Short Form Power of Attorney, Tarulli was added to the Account in the same manner that the other three agents were in the past. (Lacoff Decl., Ex. B, 96:23-97:16; 97:25-98:9; Bartone Decl., Ex. H.)

Between December 18, 2015 and December 30, 2015, Tarulli made several cash withdrawals from the Account, totaling $130,000 (the "Cash Withdrawals"). On December 31, 2015, Tarulli made an electronic transfer of $200,000 from the Account.

    4. <u>Plaintiff's Cousin, Patrick Socci, Disputes Transactions on the Account</u>

On or about December 31, 2015, Plaintiff's cousin and co-agent on the Account, Patrick Socci, submitted a fraud affidavit to Chase, challenging the Cash Withdrawals. (Bartone Decl., Ex. J at pp. 60-63.) During his deposition, Socci denied ever speaking with his cousin about the fraud affidavit and confirmed that he never independently challenged any transaction on the Account:

> Q: Sir, we are looking at this page dated December 31, 2015. Are you telling me that you did not authorize Patrick Socci to make a complaint about fraud on your account?
>
> A: Not that I remember, no.
>
> Q: You never spoke to him about challenging transactions –
>
> A: Very, very, very little, if any, communication with Mr. Patrick Socci. He's that type of person. Basically, he doesn't like to get involved.
>
> Q: Okay. But I have a document here that he signed himself, so you did not authorize him to do that?
>
> A: Not that I recall at all.
>
> …
>
> Q: You have not independently challenged any additional transactions, specific transactions, with Chase?
>
> A: No.

4

(See Lacoff Decl., Ex. A, Tr. 170:7-171:11.)

While Patrick Socci did file a fraud complaint for the $130,000 in Cash Withdrawals, no such fraud affidavit was ever submitted for the $200,000 electronic transfer from the Account.

Chase ultimately denied the fraud claim for the Cash Withdrawals due to the fact that they were made by the holder of an allegedly valid power of attorney. Plaintiff then commenced the instant action in August 2017.

B.  Procedural History

The case was commenced in New York state court on August 23, 2017. Defendant removed this action to Federal Court on September 19, 2017. (DE [1].) On October 12, 2017, Plaintiff filed the Verified Complaint. (DE [7].) On October 25, 2017, Defendant requested lave to file a motion to dismiss. (DE [8].) On November 6, 2017, the Court granted Defendant's request and set a briefing schedule. (See Order dated 11/06/2017.)

On February 28, 2018, the fully briefed motion to dismiss was filed. (DE [13].) On September 14, 2018, the motion was granted in part and denied in part. (DE [21].) Specifically, Defendant's motion to dismiss Plaintiff's claim for breach of fiduciary duty and negligence pursuant to Rule 12(b)(6) was granted. (Id.) However, Defendant's motion to dismiss the entire action pursuant to Rule 12(b)(7) was denied. (Id.)

Defendant filed their Answer on December 24, 2018. (DE [22].) An initial conference was held on March 25, 2019, and a discovery schedule was issued. (See DE [28].) Upon the parties' joint request, the case was referred to the EDNY Mediation program on August 22, 2019. (Electronic Order Referring Case dated 08/22/2019.) Following an unsuccessful mediation, Plaintiff's then counsel moved to withdraw as attorney. (DE [35].) A telephone conference was held on October 7, 2020, at which time the motion to withdraw as attorney was

5

granted. (See Order granting [35] Motion to Withdraw as Attorney dated 10/08/2020.) Plaintiff was directed to obtain new counsel by December 8, 2020. (Id.) On December 7, 2020, Plaintiff's current counsel entered a notice of appearance. (DE [44].)

From 2021 through April 20, 2023, the parties once again engaged in discovery. During this period, on July 7, 2022, the case was reassigned to the Honorable Joan M. Azrack. On April 14, 2023, Defendant requested a pre-motion conference for leave to move for summary judgment. (DE [52].) A conference was held on July 26, 2023. (DE [54].) At the conference, the parties were granted one month to attempt to resolve the action. (Id.) As a resolution proved to be unsuccessful, on September 7, 2023, the District Court issued a summary judgment briefing schedule. (See Scheduling Order dated 09/07/2023.) After extensions of the briefing schedule, the motion was fully briefed and filed on December 14, 2023. (DE [57].) On May 17, 2024, that motion was referred to the undersigned for report and recommendation. (Order Referring Motion dated 05/17/2024.)

II.     The Motion for Summary Judgment

Defendant seeks summary judgment asserting that Plaintiff's sole claim for breach of contract fails because there is no evidence to support such a claim. Furthermore, Defendant argues that pursuant to the Agreement, which is the only contract governing Plaintiff's relationship with Chase and is reinforced under New York's General Obligations Law, Chase was obligated to accept and rely upon the facially valid power of attorney presented unless and until Chase had actual knowledge that it was revoked or invalid.

Plaintiff contends that Chase breached its contract with Plaintiff by failing to exercise discretion and good judgment in safeguarding his deposits.

6

Having summarized the facts and the parties' positions the Court turns to the merits of the motion.

## DISCUSSION

I.  <u>Legal Principles: Standards on Summary Judgment</u>

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. <u>Id</u>. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Abramson v. Pataki</u>, 278 F.3d 93, 101 (2d Cir. 2002) (quoting <u>Celotex</u>, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". <u>Tolbert v. Smith</u>, 2015 WL 3875237 *4 (2d Cir. 2015); see <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. Instead, the non-

7

moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

In addition, "[a]ffidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001); see also Fed. R. Evid. 802; Fed. R. Civ. P. 56(e).

II.   The Bartone Declaration

At the outset, the Court must address the Declaration of Jennifer Bartone ("Bartone Decl."), submitted in connection with Defendant's motion. Plaintiff argues that Ms. Bartone lacks the personal knowledge of the facts she alleges and therefore her declaration should be rejected as inadmissible. The Court disagrees.

Rule 56 of the Federal Rules of Civil Procedure describes the form of affidavits to be submitted in connection with summary judgment motions. Specifically, Rule 56(e) of the Federal Rules for Civil Procedure requires that an affidavit in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge...." Fed. R. Civ. P. 56(e); see Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988); United States v. One 1984 Ford Bronco, 674 F. Supp. 424 (E.D.N.Y. 1987). An affidavit made on secondhand information and hearsay is not made on the "personal knowledge" of the affiant for the purposes of Rule 56(e). Sellers, 842 F.2d at 643.

Rule 56(e) further requires that an affidavit made in support of or opposition to a motion for summary judgment "shall set forth such facts as would be admissible at trial." Fed. R. Civ. P. 56(e). The test is whether the affiant's statements "would be admissible in evidence under any rule of evidence or exception thereto, if the affiant was on the stand testifying ..." in court. 6 J. Moore Federal Practice par. 56.22[1] at 56–752 to 56–755 (2d ed. 1988) (footnote omitted),

8

Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir.1986). Thus, when deciding a motion for summary judgment, the Court will not consider as evidence an affidavit based on inadmissible hearsay unless there is a showing that admissible evidence will be available at trial. Sellers, 842 F.2d at 643; Beyah, 789 F.2d at 989–90; Burlington Coat Factors Wrhse. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985); United States v. One 1984 Ford Bronco, 674 F. Supp. at 425–26.

It is well settled that "when offering business records in support of a motion for summary judgment, in order to avoid the bar against hearsay, the offering party should present an affidavit "from a document custodian" that "explain[s] whether [the records] were kept in the ordinary course of business," although that person "need not have personal knowledge of the actual creation of the document." Koon Chun Hing Kee Soy & Sauce Factory v. Star Mark Mgmt., 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007). Moreover, "it is well established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." Perpall v. Pavtek Corp., 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017).

Upon review of Ms. Bartone's declaration, the Court finds that it Federal Rule of Evidence 803. The declaration sets forth Ms. Bartone's position and knowledge. (See Bartone Decl. ¶ 1.) The declaration clearly establishes Ms. Bartone's personal knowledge regarding Chase's acceptance of powers of attorney and an agent's authority to perform the same types of transactions as principals.

Accordingly, Plaintiff's request to deem the Bartone Declaration inadmissible is denied.

III.   Disposition of the Motion

The sole claim before the Court is for breach of contract, However, Plaintiff has failed to identify any specific provision in the Agreement that Chase has breached. Rather, Plaintiff

9

contends that Chase breached an implied obligation to safeguard Plaintiff's deposits. At this stage of the litigation, Plaintiff's claim is lacking.

    A. Breach of Contract

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Edwards v. Sequoia Fund, Inc., 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted). A plaintiff must also identify the provisions of the contract that were breached. LMEG Wireless, LLC v. Farro, 140 N.Y.S.3d 593, 596 (2d Dep't 2021). When interpreting a contract to determine what terms and conditions are provided in the purported agreement, "the intention of the parties should control, and the best evidence of intent is the contract itself." Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013) (alteration, citation and internal quotation marks omitted); see also Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985) ("As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties."). The court must initially determine "whether the language the parties have chosen is ambiguous." Id. (quoting Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011)); Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." (citation omitted)).

If the language in the contract "has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion," Marvel Characters, 716 F.3d at 313, the contract is unambiguous, and its meaning is "a question of law for the court to decide." JA Apparel Corp. v.

10

Abboud, 568 F.3d 390, 397 (2d Cir.2009). "In interpreting an unambiguous contract, the court is to consider its [p]articular words not in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby ... but the court is not to consider any extrinsic evidence as to the parties' intentions." Id. (citations and internal quotation marks omitted); see also In re AMR Corp., 730 F.3d 88, 98 (2d Cir. 2013) ("[C]ourts applying New York law construe a contract 'so as to give full meaning and effect to all of its provisions.'" (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996))).

If the contract is ambiguous, "extrinsic evidence as to the parties' intent may properly be considered." JA Apparel, 568 F.3d at 397. As a general matter, "[w]here there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." Id. However, if the ambiguities in the contract can be "resolved through extrinsic evidence that is itself capable of only one interpretation," then the court may determine the meaning of the contract as a matter of law. Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 69 (2d Cir. 2008); see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir. 2000) ("Although generally interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder, the court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." (alteration, citation and internal quotation marks omitted)).

Plaintiff's allegations are inadequate to state a claim for breach of contract. Plaintiff does not allege that any specific contractual provision was purportedly breached, let alone how or why it was breached. Simply stated, Plaintiff has failed to state a breach of contract claim. As there is an express agreement governing the subject matter of the dispute, namely the Agreement, no

11

implied contract claims can exist. Bader v. Wells Fargo Home Mortg., Inc., 773 F. Supp. 2d 397, 413-14 (S.D.N.Y. 2011) ("a contract cannot be implied in fact where . . . there is an express contract covering the subject matter involved."); Ludemann Elec., Inc. v. Dickran, 74 A.D.3d 1155, 903 N.Y.S.2d 532, 534 (2d Dep't 2010) (emphasis in original) ("a contract cannot be implied *in fact* where the facts are inconsistent with its existence ... or where there is an express contract covering the subject-matter involved."); see also Valentino v. Davis, 270 A.D.2d 635, 703 N.Y.S.2d 609, 612 (3d Dep't 2000) ("A contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement."). Thus "the theories of express contract and of contract implied in fact ... are mutually exclusive." Bowne of New York, Inc. v. Int'l 800 Telecom Corp., 178 A.D.2d 138, 576 N.Y.S.2d 573, 574 (1st Dep't 1991). Since the Agreement is a written contract governing the claims at issue, Plaintiff's claims for breach of an implied contract cannot be maintained.

### B. The Power of Attorney

Assuming arguendo that Plaintiff could allege an implied contract claim, the claim would still fail. Examination of the statutory scheme respecting powers of attorney makes clear that Chase was obligated to accept the Tarulli power of attorney.

Pursuant to New York General Obligations Law 5-1504(1)(b), "a person that in good faith accepts an acknowledge power of attorney without actual knowledge that the signature is not genuine may rely upon the presumption that the signature is genuine." Further, New York General Obligations Law 5-1504(1)(c), states that "a person in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is void, invalid or terminated . . . may rely upon the power of attorney as if the power of attorney were genuine, valid and still in effect." See also Emigrant Bank v. Rosabianca, 156 A.D.3d 468, 475-

12

76, 67 N.Y.S.3d 175, 183 (1st Dep't 2017) ( "[a] bank is entitled, under the statute, to accept and rely on a properly executed power of attorney in the absence of actual knowledge that the principal lacked capacity to subscribe it or was subject to fraud, duress or undue influence in executing it, unless the bank has actual notice that the instrument has been terminated or revoked.").

General Obligations Law 5-1504(2) states that no person located or doing business in this state shall refuse, without reasonable cause, to honor a statutory short form power of attorney properly executed . . . in accordance with the laws in effect a the time of its execution." "Reasonable cause" includes: (i) refusal by an agent to provide an original or attorney - or court - certified copy of the power of attorney; (ii) actual knowledge of the principal's death or incapacitation; (iii) actual knowledge or reasonable belief that the power of attorney was procured through fraud, duress or undue influence; or (iv) actual notice of the termination or revocation of the power of attorney.

Here, there is no evidence that Chase had actual knowledge of any form of fraud regarding the account until December 31, 2015. Chase was presented with a facially valid power of attorney by Tarulli. The transactions at issue were made from December 18, 2015 – December 31, 2015. Chase first received notice by Patrick Socci, Plaintiff's agent via a power of attorney, on December 31, 2015, that there was a possible fraud. Following the fraud notification, no further transactions occurred. As there was no actual knowledge that the power of attorney lacked authority, Chase was under no obligation to refuse its acceptance.

In Crandall v. Personal Mortg. Corp., 210 A.D.2d 981, 982, 621 N.Y.S.2d 249, 250 (4th Dep't 1994), an inmate brought a claim against a bank that relied on a power of attorney signed by the inmate's wife. The court rejected the inmate's argument that the bank had a duty to

13

independently contact him, noting that because the power of attorney was duly executed, the bank had no obligation to contact the principal. Id. The court noted that "in the absence of proof of revocation, the duly executed power of attorney naming plaintiff's wife as his attorney-in-fact authorized defendants to rely upon the power of attorney." Id. A similar argument was rejected in Estate of Leventhal ex rel. Bernsetin v. Wells Fargo Bank, N.A., 2015 WL 5660945210, at *12 n.21(S.D.N.Y. Sept. 25, 2015). The plaintiff-estate claimed that the bank was required to investigate a power of attorney presented by the decedent-customer's husband because it contained her initials, not her full name. The argument was rejected with the court noting that the power of attorney was facially valid and there was no independent basis to question its validity. Id.

Here, Socci has not established that Chase has breached any duty. Chase was entitled to rely on the power of attorney, as nothing in the record suggests that Chase acted in bad faith or had actual knowledge that Tarulli's power of attorney was invalid. See Sanford v. TIAA–CREF Individual & Institutional Servs., LLC, No. 14 Civ. 1496, 2015 WL 1881396, at *2 (2d Cir. Apr. 27, 2015) ("Under New York law, which both parties agree governs the agency relationships at issue in this case, a third party may rely on a power-of-attorney unless it has 'actual knowledge that the principal lacked capacity to execute' the power-of-attorney.") (quoting N.Y. Gen. Oblig. Law § 5–1504(3)).

Accordingly, Plaintiff has failed to state a claim for breach of contact. As such, this Court respectfully recommends that Defendant's summary judgment motion be granted, and Plaintiff's breach of contract claim be dismissed.

IV.     Leave To Amend

14

Plaintiff requests leave to amend to add a claim of negligence. A court "should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend may be denied in cases of, among other things, "futility" and "undue prejudice to the opposing party." Foman v. Davis, 371 U.S. 178, 182 (1962). Both are applicable in the instant case.

As the Court has already dismissed a negligence claim in 2018, amendment would be futile and contrary to the law of the case. Further, the parties have spent over five years actively litigating this case. Discovery has closed and motions for summary judgment have been made. Allowing amendment at this late hour is the definition of "undue prejudice to the opposing party." Foman, 371 U.S. at 182. Accordingly, it is respectfully recommended that Plaintiff's request for leave to amend to a claim of negligence be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment, appearing as Docket Entry No. 57 herein, be granted and the case dismissed in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else

15

waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
August 13, 2024

                                                  /s/ Anne Y. Shields
                                                 Anne Y. Shields
                                                 United States Magistrate Judge